**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-cv-25676-ALTMAN**

**FERNANDO ARMANDO CHARON MARTINEZ,**

*Petitioner*,

*v.*

**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,**

*Respondent*.
______________________________/

# ORDER

Our Petitioner, Fernando Armando Charon Martinez, has filed a *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, arguing that his "continued detention is unconstitutional" under the Fifth Amendment. Petition [ECF No. 1] at 6. The Government responds that Charon Martinez is being lawfully detained under 8 U.S.C. § 1231(a) and that his Petition is "premature." Response [ECF No. 8] at 1. We agree that his *Zadvydas*[1] claim is premature and, as we'll explain, his remaining claim fails on the merits. We therefore **DISMISS** Ground One without prejudice and **DENY** Ground Two.

## THE FACTS

Charon Martinez is a "[n]ational and [c]itizen of" Cuba who entered the United States on November 3, 1995, as a "CU-6 Cuban Refugee." Record of Deportable/Inadmissible Alien [ECF No. 8-2] at 2. On April 27, 1999, his immigration status was "adjusted to a Lawful Permanent Resident, retroactive to November 3, 1995." *Ibid.*

[1] *Zadvydas v. Davis*, 533 U.S. 678 (2001).

In February 2009, Charon Martinez was convicted in Minnesota of "Attempted Simple Robbery." Conviction Records [ECF No. 8-12] at 1. On June 22, 2010, the Department of Homeland Security initiated removal proceedings against him, alleging that his conviction constituted an aggravated felony under the Immigration and Nationality Act ("INA"). *See* Notice to Appear [ECF No. 8-3] at 1–3. On November 16, 2010, an Immigration Judge ("IJ") ordered Charon Martinez "removed from the United States to Cuba." IJ Order [ECF No. 8-4] at 1. Charon Martinez "[w]aived" his right to appeal that decision. *Ibid.*

On February 14, 2011, Immigration and Customs Enforcement ("ICE") released Charon Martinez under an Order of Supervision ("OSUP") because it had "not effected [his] deportation or removal during the period prescribed by law." OSUP [ECF No. 8-13] at 1. The OSUP required Charon Martinez to "appear in person" when requested, "assist . . . in obtaining any necessary travel documents," and not to "commit any crimes." *Ibid.* Charon Martinez remained outside ICE custody for more than fifteen years. *See* Detention History ("Det. Hist.") [ECF No. 8-10] at 1 (recording his February 14, 2011, release under an "Order of Supervision" and listing his next "Book In Date" as August 2, 2026).

On July 31, 2026, ICE "encountered [Charon Martinez] at the Dade County Jail[,]" where he was detained under an outstanding child-support warrant. Record of Deportable/Inadmissible Alien [ECF No. 8-2] at 2. ICE then issued a warrant for his removal and took him into custody. *See* Warrant of Removal [ECF No. 8-7] at 1 (directing officers "to take into custody and remove" Charon Martinez); Det. Hist. [ECF No. 8-10] at 1 (recording his return to ICE custody in August 2026).

On August 3, 2026, ICE revoked Charon Martinez's OSUP, citing his outstanding child-support warrant as a violation of his release conditions. *See* Notice of Revocation [ECF No. 8-5] at 1 ("You violated a condition of your release."). ICE personally served Charon Martinez with the revocation notice, which he "[r]efused to [s]ign." *Id.* at 2. That same day, an immigration officer

"conducted an initial informal interview . . . to afford [Charon Martinez] an opportunity to respond to the reasons for revocation[.]" Alien Informal Interview [ECF No. 8-11] at 1. Charon Martinez "did not" provide "a written statement" or "any documents" at his interview. *Ibid.*

ICE subsequently transferred Charon Martinez to the Miami Federal Detention Center, where ICE's records reflect that he remains "In Custody." Det. Hist. [ECF No. 8-10] at 1. On August 13, 2026, ICE notified Charon Martinez that it "intends to remove [him]" to Mexico. Notice of Removal [ECF No. 8-9] at 1. On August 14, 2026,[2] Charon Martinez filed this Petition, arguing that his continued detention violates the Fifth Amendment because he has "never received any decision or any further communication" about a custody review. Petition [ECF No. 1] at 6–7. He asks us to order his "immediate release from immigration custody." *Id.* at 8.

## THE LAW

The federal habeas corpus statute, 28 U.S.C. § 2241, "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Cadet v. Bulger*, 377 F.3d 1173, 1181–82 (11th Cir. 2004) (quoting 28 U.S.C. § 2241(c)(3)), *abrogated in part on other grounds by Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). A petition for review in the court of appeals is "the sole and exclusive means for judicial review of an order of removal," 8 U.S.C. § 1252(a)(5), so we don't have jurisdiction to review a removal order in habeas. But "the district court retains jurisdiction under 28 U.S.C. § 2241" to hear an alien's challenge to the legality of her detention. *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1365 (11th Cir. 2006); *see also Vaz v. Skinner*, 634 F. App'x 778, 780 (11th Cir. 2015) ("Although district courts do not have

[2] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). Although the Eleventh Circuit hasn't specifically held that the prison-mailbox rule applies to immigration detainees, it has explained that the rule "is best read to apply to anyone confined in an institution, whether civilly or criminally." *Boatman v. Berreto*, 938 F.3d 1275, 1277 (11th Cir. 2019) (cleaned up); *see also Fosu v. Garland*, 36 F.4th 634, 637 (5th Cir. 2022) ("[T]he prison mailbox rule applies to pro se detainees in immigration proceedings.").

jurisdiction to review § 2241 petitions filed by an alien challenging a final order of removal, jurisdiction exists over a § 2241 petition if the alien challenges the legality of his detention." (citation omitted)).

Since "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Supreme Court has held that the government must "limit[ ] an alien's post-removal detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689–90. Under *Zadvydas*, "six months is a presumptively reasonable period to detain a removable alien awaiting deportation under such circumstances." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1051 (11th Cir. 2002) (citing *Zadvydas*, 533 U.S. at 701). The Court was quick to point out, however, that this six-month period is just a guidepost for the lower courts and that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. "Therefore, in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale*, 287 F.3d at 1052. If the detainee makes such a showing, the government has the right to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

## ANALYSIS

We've liberally construed two grounds for habeas relief from Charon Martinez's Petition.[3] *First*, Charon Martinez alleges that his "continued detention is unconstitutional" under the Fifth Amendment because ICE has detained him beyond the presumptively reasonable removal period established by *Zadvydas v. Davis*, 533 U.S. 678 (2001) ("Ground One"). *See* Petition at 6. *Second*, Charon Martinez challenges his "Order of Supervision or Deportation," which we'll liberally construe as an

[3] Because Charon Martinez is proceeding *pro se*, we construe his filing liberally. *See Tannenbaum v. United States,* 148 F.3d 1262, 1263 (11th Cir. 1998) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.").

allegation that ICE violated his procedural due-process rights and failed to follow the regulations governing the revocation of his OSUP ("Ground Two"). *See* Petition at 6 (cleaned up).

**I. Ground One**

Charon Martinez's *Zadvydas* claim is premature. On November 16, 2010, the IJ ordered Charon Martinez "removed from the United States to Cuba," and Charon Martinez "[w]aived" his right to appeal. IJ Order at 1. His removal order therefore became final that day because an IJ's decision "becomes final upon waiver of appeal." 8 C.F.R. § 1003.39. And, as the Eleventh Circuit has explained, § 1231(a) "controls the detention and removal of an alien subject to a final order of removal." *De La Teja v. United States*, 321 F.3d 1357, 1363 (11th Cir. 2003). Section 1231(a)(6), in turn, authorizes the continued detention of certain noncitizens who have been ordered removed "beyond the removal period." 8 U.S.C. § 1231(a)(6).

Although Charon Martinez's removal order became final in 2010, ICE released him under supervision in February 2011 and didn't return him to physical immigration custody until August 2026. *See* OSUP at 1 (permitting Charon Martinez "to be at large" under specified conditions); *see also* Det. Hist. at 1 (identifying August 2026 as his next "Book In Date"). The six-month presumption recognized in *Zadvydas* concerns physical detention, not time spent released under an OSUP. As the Supreme Court has explained, *Zadvydas* "consistently used the words 'detain' and 'custody' to refer exclusively to physical confinement and restraint." *Jennings v. Rodriguez*, 583 U.S. 281, 311 (2018). And the Eleventh Circuit has recognized that a noncitizen placed under an OSUP has been "released from detention." *Djadju v. Vega*, 32 F.4th 1102, 1104 (11th Cir. 2022).

Nor will we aggregate Charon Martinez's prior detention with his current detention. "[W]e don't think *Zadvydas* precludes the government from detaining a criminal alien for 'even one day'" simply because he was detained many years earlier. *Flores-Reyes v. Assistant Field Off. Dir.*, 2026 WL 406708, at *3 (S.D. Fla. Feb. 13, 2026) (Altman, J.) (citing *Zadvydas*, 533 U.S. at 700). More than fifteen

years separate Charon Martinez's periods of detention, and there's no indication that ICE released and re-detained him to evade judicial review. *See, e.g.*, *Habash v. Warden, Krome Serv. Processing Ctr.*, 2026 WL 1217754, at *3–4 (S.D. Fla. May 5, 2026) (Ruiz, J.) (declining to aggregate two periods of detention separated by more than twenty years because there was no evidence of an "evasive scheme" to "avoid judicial scrutiny" (quoting *Flores-Reyes*, 2026 WL 406708, at *3)).

When Charon Martinez filed his Petition on August 14, 2026, he had been back in ICE custody for less than one month. *See* Det. Hist. at 1 (identifying August 2026 as his next "Book In Date"). He therefore hadn't satisfied *Zadvydas*'s six-month threshold. *See Akinwale*, 287 F.3d at 1052 ("This six-month period thus must have expired *at the time* Akinwale's § 2241 petition was filed in order to state a claim under *Zadvydas*." (emphasis added)). In sum, we **DISMISS** Ground One without prejudice as premature.

## II. Ground Two

Charon Martinez's remaining claim fares no better. We'll liberally construe his challenge to his "Order of Supervision or Deportation" as alleging that ICE violated his due-process rights and failed to follow the procedures governing the revocation of his OSUP. Petition at 6 (cleaned up).

We can consider that narrower procedural challenge. As the Eleventh Circuit has explained, "[e]ven when a decision is committed to agency discretion, a court may consider allegations that an agency failed to follow its own binding regulations." *Kurapati v. U.S. Bureau of Citizenship & Immigr. Servs.*, 775 F.3d 1255, 1262 (11th Cir. 2014) (citation omitted). We'll therefore consider whether ICE complied with its procedural obligations without second-guessing the discretionary decision to revoke Charon Martinez's release.

Section 241.4 governs the custody of certain noncitizens who have been ordered removed, including "[a]n alien ordered removed who is removable under sections 237(a)(2) or 237(a)(4)" of the INA. 8 C.F.R. § 241.4(a)(3). Because Charon Martinez is subject to a final removal order based on an

aggravated-felony conviction, these regulations govern his post-removal-order custody. *See* IJ Order at 1 (ordering Charon Martinez "removed from the United States to Cuba"); *see also* Notice to Appear at 3 (charging him with removability based on his conviction). Under 8 C.F.R. § 241.4(l)(1), ICE may return a noncitizen to custody if he "violates the conditions of release." But ICE must notify him of "the reasons for revocation" and afford him "an initial informal interview promptly after his or her return to Service custody" so that he can respond to those reasons. *Ibid.*

The record establishes that ICE provided Charon Martinez with these protections. On August 3, 2026, ICE served him with a Notice of Revocation, explaining that he had "violated a condition of [his] release." Notice of Revocation at 1–2. That same day, ICE documented an informal interview conducted "to afford [Charon Martinez] an opportunity to respond to the reasons for revocation[.]" Alien Informal Interview at 1. Although afforded that opportunity, Charon Martinez "did not" provide "a written statement" or "any documents." *Ibid.* Unlike cases in which ICE failed to provide the required opportunity to contest revocation, the record here documents both notice and an interview. *Cf. Grigorian v. Bondi*, 824 F. Supp. 3d 1243, 1256 (S.D. Fla. 2025) (finding that ICE violated its regulations by failing to provide an "informal interview promptly after [the petitioner's] detention" or another "meaningful opportunity to contest the reasons for revocation").

Nor does Charon Martinez establish that ICE violated its obligation to provide a subsequent custody review. Under § 241.4(l)(3), the normal review process "will ordinarily be expected to occur within approximately three months after release is revoked." ICE revoked Charon Martinez's release on August 3, 2026, and he filed this Petition just eleven days later. *See* Notice of Revocation at 2 (reflecting service on August 3, 2026); *see also* Petition at 8 (signed on August 14, 2026). The ordinary period for that review therefore hadn't elapsed when Charon Martinez filed his Petition.

And to the extent Charon Martinez separately alleges that these procedures violated his constitutional right to due process, we disagree. The Eleventh Circuit has explained that "a mere

irregularity in agency procedure does not deny a person due process." *Dacostagomez-Aguilar v. U.S. Att'y Gen.*, 40 F.4th 1312, 1319 (11th Cir. 2022). Instead, a procedural error must deprive someone of "adequate notice or an opportunity to be heard." *Ibid.* Charon Martinez received both when ICE notified him of the reasons for revoking his release and interviewed him that same day. *See* Notice of Revocation at 1–2; *see also* Alien Informal Interview at 1 (documenting an interview conducted to afford Charon Martinez "an opportunity to respond to the reasons for revocation"). Charon Martinez thus hasn't established that ICE violated the procedural regulations governing his re-detention or deprived him of notice and an opportunity to be heard. So, we **DENY** Ground Two.

* * *

We therefore **ORDER AND ADJUDGE** as follows:

1. Ground One of Fernando Armando Charon Martinez's Petition for Writ of Habeas Corpus [ECF No. 1] is **DISMISSED without prejudice** as premature.

2. Ground Two is **DENIED**.

3. All pending motions are **DENIED as moot**, and all deadlines are **TERMINATED**.

4. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida, on November 10, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: Fernando Armando Charon Martinez, *pro se*
counsel of record